PATRICIA M. BAILEY, Appellant, v. STATE OF NEVADA; ROLAND D. WESTERGARD, STATE ENGINEER; JOHN DOES 1 through 5, Respondents.

No. 9579

May 16, 1979                                        594 P.2d 734

*Ed. A. Hollingsworth,* Reno, for Appellant.

*Richard H. Bryan,* Attorney General, and *Harry Wright Swainston,* Deputy Attorney General, Carson City, for Respondents.

## OPINION

By the Court, MOWBRAY, C. J.:

Appellant, Patricia M. Bailey, challenged, in district court, the State Engineer's cancellation of a permit appropriating underground water (No. 22532), and the Engineer's denial of Bailey's reapplication for the same water right (No. 25905).

The district court disallowed Bailey's challenge to the dismissal of the original permit, No. 22532, but the court did direct the State Engineer to grant, in part, her new application, No. 25905, by appropriating water for the cultivation of 80 acres.

Bailey has appealed, claiming that the court erred in (1) denying her challenge to the dismissal of permit No. 22532, because Bailey claims she had no notice of the cancellation of the original permit, and (2) failing to grant Bailey, under her new permit No. 25905, appropriate water for the cultivation of 160 acres in addition to the 80 acres allowed by the court.

We agree that under the circumstances presented, permit No. 22532 should not have been cancelled, and we hold that Bailey is entitled to an appropriate award covering the 160 acres. We reverse and remand for that purpose.

## THE FACTS

The Division of Water Resources issued Patricia M. Bailey No. 22532 on February 22, 1966. The permit provided for the

appropriation of underground water for use on Bailey's Desert Land Entry Acreage in Hualapai Flat, Nevada. As a condition of the granting of the permit, Bailey was required to begin work on or before August 22, 1966, complete work on or before August 22, 1967, and apply the water to beneficial use on or before August 22, 1970. She was further required to submit proof of compliance with each condition within 30 days after each due date.

Bailey and her husband had difficulty locating a productive well, drilling three dry holes. She was granted a one year extension for completion of work, to August 22, 1968. The 200 foot well was completed during that year, and the water applied to the irrigation of some 80 of appellant's 311 acres. A year later the depth of the well was deepened to 400 feet. By the fall of 1970, Bailey and her husband had cleared and cultivated an additional 160 acres and they had planted a crop in anticipation of irrigating the following spring. While the Baileys were working on the land, the State Engineer attempted to notify Bailey at her residential address in Sparks, Nevada, that as no proof of beneficial use had been filed by September 22, 1970, her permit was being held for cancellation unless such proof was received within 30 days.

The trial court found that:

> On September 22, 1970, a Notice was mailed by Certified Mail to Appellant [Bailey] at her correct address, pursuant to NRS 533.410. The envelope containing the Notice was received in the Sparks, Nevada[,] Post Office and Appellant was sent two notices of its arrival. It was returned by the Sparks Post Office marked "Unclaimed" and received in Respondent's [State Engineer's] office on October 12, 1970. Appellant did not actually receive it. On October 28, 1970[,] the permit was cancelled. No notice of cancellation was sent to Appellant. Appellant, through her husband, learned of the cancellation shortly before January 11, 1971. Appellant's husband inquired of personnel in Respondent's office as to what could be done about the cancellation. Appellant's husband was told that a new application could be filed. Appellant chose to accept this "advice", and filed a new application No. 25905 on January 11, 1971, for the same water rights as applied for under the previous permit. On April 22, 1971, the Respondent denied said application 25905.

The reason given for the denial of Bailey's new application was that the proposed point of diversion was within an area of concentrated development in the Hualapai Flat area, where

water levels had been lowering within the past three years, and that the granting of the permit would "tend to impair the value of existing rights." The office engineer who advised Bailey's husband to file a new application testified that when he did so, he was aware that no new permits were being issued in that area.

The district court dismissed Bailey's appeal of the cancellation of permit No. 22532; however, the court honored her subsequent application by granting her equitable relief to the extent of three acre feet per year for the 80 acres to which the water had previously been applied. The court concluded that there had been a lack of diligence in developing and applying water to the additional 160 acres, and denied equitable relief as to that portion of the application.

## APPEAL OF CANCELLATION OF PERMIT NO. 22532

Bailey suggests that the State Engineer's cancellation of permit No. 22532, in the absence of actual receipt of the notice sent by certified mail, constituted a violation of her due process rights. We disagree. Bailey was notified at the outset that her permit was conditioned upon compliance with the deadlines set out in the State Engineer's endorsement of her application. The State Engineer fully complied with the directive of NRS 533.410 that an additional notice be sent by certified or registered mail, after expiration of the deadline, to the effect that failure to submit proof of beneficial use or request an extension within 30 days would result in cancellation. Such means of notice is reasonably calculated, under the circumstances, to reach the permittee. That it failed to do so in the case at hand cannot be attributed to any neglect of duty on the part of the State Engineer. *See* Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 318–20 (1950); *compare* Schroeder v. City of New York, 371 U.S. 208 (1962) (water rights; publication and posting in vicinity of property inadequate notice). We note that the supreme courts of Oregon and Utah have reached the same conclusion with regard to similar due process claims by water appropriation permittees who failed to receive actual notice through certified or registered mail of their failure to comply with the conditions of their permits. Green v. Wheeler, 458 P.2d 938 (Or. 1969), *cert. denied* 397 U.S. 990 (1970); Mosbey Irrigation Company v. Criddle, 354 P.2d 848 (Utah 1960).

However, we have also ruled that a determination that the

State Engineer has correctly cancelled a permit, under his statutory mandate, "does not affect the power of the district court to grant equitable relief to the permittee when warranted." State Engineer v. American Nat'l Ins. Co., 88 Nev. 424, 426, 498 P.2d 1329, 1330 (1972). We do not believe that it was the intent of the Legislature to preclude judicial review of an order or decision of which the aggrieved party had no actual knowledge until after expiration of the 30 day period, such as in the instant case.

We also note that, although the state water law does not specifically require the State Engineer to serve notice of a final decision or order, the Administrative Procedure Act does so require. NRS 233B.125.[1] That Act, by its very terms, is designed "to establish minimum procedural requirements for the regulation-making and adjudication procedure of all agencies of the executive department of the state government" unless expressly exempted, and is "intended to supplement statutes applicable to specific agencies." NRS 233B.020 (1) and (2).

In the instant case, it is undisputed that there was no attempt to inform Bailey of the final decision cancelling her permit, and that she had no actual knowledge of the cancellation until shortly before January 11, 1971. At that time, her husband was informed by the representative of the State Engineer that his only recourse was to apply for a new permit. This action was followed, even though the representative knew such permits were not being favorably considered.

In Donoghue v. Tonopah Oriental Mining Co., 45 Nev. 110, 198 P. 553 (1921), we refused to enforce literal compliance with the terms of a statute regulating certain mining claims where the claimant, through his representatives, had relied in good faith upon the advice of local government officials as to the proper procedures to follow in order to maintain a claim in good standing. Here, the office of the State Engineer has been charged with the statutory duty of administering the complex system of water rights within the state. We believe that lay members of the public are entitled to rely upon its advice as to the procedures to be followed under the state water law. As we

---

[1]NRS 233B.125, in pertinent part, reads:

"A decision or order adverse to a party in a contested case shall be in writing or stated in the record. . . . Parties *shall be notified* either personally or by certified mail of any decision or order. Upon request a copy of the decision or order shall be delivered or mailed forthwith to each party and to his attorney of record." (Emphasis added.)

concluded in *Donoghue,* we believe that the legislative intent would not be served by rigid application of the terms of the statute to the appellant. *Cf.* Rosenbloom v. United States, 355 U.S. 80 (1957); Fallen v. United States, 378 U.S. 139 (1964); Carter v. United States, 168 F.2d 310 (10th Cir. 1948); Commercial Credit Corp. v. United States, 175 F.2d 905, 906-7 (8th Cir. 1949); State v. Delaney, 540 P.2d 61 (Haw. 1975).

We conclude that the trial court erred in its holding that it was precluded from considering Bailey's appeal of the cancellation of permit No. 22532, and we hold that under the principles of *American National Insurance* appropriate equitable relief should have been granted with respect to that permit.

## EQUITABLE RELIEF

Bailey also suggests that the court erred in limiting the equitable relief granted, predicated on the new permit, to the 80 acres already under cultivation.

In State Engineer v. American Nat'l Ins. Co., *supra,* we upheld the granting of equitable relief to a permittee who had not timely filed proof of beneficial use. In that case, the parties agreed that the well had been completed, the pump installed and the water used to cultivate the land before the time for filing proof of beneficial use had passed. The district court had found that considerable sums had been spent improving the land; that no other person would be damaged if the permittee were allowed to use the water appropriated under the permit.

In this case, the court found that Bailey and her husband had also spent substantial sums in drilling for water and improving the land, and that water had been applied to some of the acres under cultivation. The court also found that the granting of a permit, at least as to the 80 acres, "would constitute an insignificant impairment of the existing water rights when compared to the damage that Appellant [Bailey] would sustain resulting from total denial of [the] application," noting that the statute contemplates that any appropriation of ground water must allow for a "reasonable lowering of the static water level at the appropriator's point of diversion." NRS 534.110(4). The court found, however, that Bailey had failed to show "diligence in developing and applying water to a beneficial use" on the remaining acreage, and for that reason, denied relief to that extent. This conclusion appears to be predicated solely on the finding that the Baileys had not in fact met the 1970 deadline for filing proof of beneficial use established by the State Engineer in 1966.

Bailey now challenges the trial court's finding that she had failed to show sufficient diligence in applying water to the 160 additional acres which had been cleared and cultivated at the time the permit was cancelled.[2]

The concept of diligence in the application of water to beneficial use has its origins in the early development of the principles of prior appropriation in the water law of the Western states. *See* 1 S. Wiel, *Water Rights in the Western States*, § 382 (3d ed. 1911). Under the doctrine of relation, it was recognized that realities faced by settlers of semi-arid lands required accommodation to be made for gradual expansion of water use beyond the initially appropriated amounts. In Ophir Mining Co. v. Carpenter, 4 Nev. 534, 543-44 (1869), the court explained:

> Where the right to the use of running water is based upon appropriation, and not upon an ownership of the soil, it is the generally recognized rule here that priority of appropriation gives the superior right. When any work is necessary to be done to complete the appropriation, the law gives the claimant a reasonable time within which to do it, and although the appropriation is not deemed complete until the actual diversion or use of the water, still if such work be prosecuted *with reasonable diligence,* the right relates to the time when the first step was taken to secure it. If, however, the work be not prosecuted with diligence, the right does not so relate, but generally dates from the time when the work is completed or the appropriation is fully perfected. (Emphasis added.)

The court further noted that diligence had been defined as the "steady application to business of any kind, constant effort to accomplish an undertaking," and that in the context of water appropriation this meant proceeding "with all practical expedition, with no delay, except such as may be incident to the work itself." *Id.* at 546.

In *Ophir,* the claimant in question was attempting to establish that the priority of his increased use of water to supply the village of Dayton should relate back to his first construction of a ditch for that purpose. The court concluded, however, that in view of an 18 month suspension of work upon the enlargement of the ditch, apparently related to the pecuniary circumstances

---

[2]Bailey also challenges, without supporting argument or authority, the limitation of three acre feet per year. Under these circumstances, we find no basis to question the determination that such should be their appropriation under NRS 533.035, which provides that "[b]eneficial use shall be the basis, the measure and the limit of the right to the use of water."

of the claimant rather than to factors such as weather or the nature of the work itself, the claimant had not shown the requisite diligence to entitle him to the earlier priority. Other court decisions applying this principle make it clear that the facts and circumstances of each case are to be considered on an individual basis, taking into account the nature of the task and the difficulties encountered in the project. *See esp.* In re Hood River, 227 P. 1065 (Or. 1924) (diligence shown when project not completed within two decades, under the particular circumstances).

This principle has been incorporated into the state water law, and is reflected in NRS 533.380(1)(a) which requires that in his endorsement of approval upon an application for the appropriation of water the State Engineer shall "[s]et a time prior to which actual construction work shall begin . . . and order that the work shall be prosecuted diligently and uninterruptedly to completion unless temporarily interrupted by the elements."

In this case, the record shows that the Baileys worked on their land continuously from the time the original permit was granted until it was cancelled in the fall of 1970. After the well was initially completed, it was deepened in order to obtain adequate water for the irrigation of the additional acreage. Pipes were obtained and a right-of-way arranged. The 160 acres had been cleared and a crop planted. But for the cancellation, the water would have been applied to the additional 160 acres by the following spring. The State Engineer testified that one or two year extensions on the time for filing proof of beneficial use were given as a matter of "general procedure", unless precluded by "extenuating circumstances", and that he knew of no such circumstances in the case of the Baileys. In fact, he had previously granted Mrs. Bailey a one year extension for the filing of proof of completion of work after they had had difficulty locating a productive well. Granting a similar extension on the time for filing proof of beneficial use would simply appear to have given recognition to the delay necessarily occasioned by this problem. We note that the portion of the statute which gives the State Engineer the authority to set deadlines and grant such extensions contemplates a maximum of ten years from the permit approval date for filing proof of beneficial use. NRS 533.380(1)(c) and (3).

Under the circumstances here presented, we believe, and so hold, that Bailey is entitled to equitable relief as to the 160 acres.

We therefore conclude that the order of the district court dismissing appellant's challenge to the cancellation of permit

No. 22532 must be reversed, and that relief should be granted, under that permit, as to the 160 acres under cultivation at the time the permit was cancelled, as well as the 80 acres already granted. We remand to the district court for further proceedings in accordance with this opinion.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.